ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| PR RECOVERY & DEVELOPMENT JV, LLC Por conducto de su agente autorizado, ISLAND PORTFOLIO SERVICES, LLC.<br><br>Apelados<br><br>v.<br><br>EMPRESAS ARR, INC., ANÍBAL ROLDÁN RODRÍGUEZ, SAMAIRA JUDITH DE JESÚS MORALES Y LA SOCIEDAD DE GANANCIALES COMPUESTA POR AMBOS<br><br>Apelantes | KLAN202401064 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Sobre: Cobro de Dinero / Incumplimiento de Contrato y Ejecución de Hipoteca y Gravamen Mobiliario<br><br>Caso Núm.: CG2020CV00203 |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez

Rodríguez Casillas, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de abril de 2025.

Comparecen ante este Tribunal apelativo, Empresas ARR, Inc.; el señor Aníbal Roldán Rodríguez; la señora Samaira Judith de Jesús Morales; y la Sociedad Legal de Gananciales compuesta por ambos (en adelante, "parte apelante"). Solicitan que revoquemos la *Sentencia* emitida el 27 de febrero de 2024,[1] por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante, "TPI"). Mediante esta, se acogió la *"Solicitud de Sentencia Sumaria"* presentada por PR Recovery & Development JV, LLC, y resolvió que la parte apelante incumplió con los pagos por concepto de préstamo. Por lo que le condenó al pago solidario de la deuda, y ordenó la

---

[1] Notificada el 4 de marzo de 2024.

ejecución de la hipoteca, así como el gravamen mobiliario que garantizaban la misma.

Por los fundamentos que se esbozan a continuación, **revocamos** la *Sentencia* emitida por el TPI. Veamos.

**-I-**

El **21 de enero de 2020**, PR Recovery & Development JV, LLC, por conducto de su agente autorizado, Island Portfolio Services, LLC. (en adelante, "PR Recovery" o "parte apelada") presentó una *Demanda* de Incumplimiento de Contrato, Ejecución de Hipoteca y Cobro de Dinero en contra de la parte apelante.[2] En síntesis, adujo que el **7 de octubre de 2018** adquirió por compra los derechos de créditos de un préstamo de $150,000.00 que la parte apelante convino el **25 de enero de 2011** con el Banco de Desarrollo Económico de Puerto Rico (en adelante; "BDE").[3] El referido préstamo estaba garantizado mediante hipoteca, gravamen mobiliario, cesión de derechos y créditos, y garantía solidaria.[4] Asimismo, alegó que el préstamo, originalmente suscrito entre la parte apelante y el BDE, se renovó por primera vez el **9 de noviembre de 2012**, a la suma de $225,000.00, con fecha de vencimiento al **8 de noviembre de 2013**. Asimismo, señaló que el préstamo fue renovado por segunda vez el **25 de septiembre de 2014** a $275,000.00, con fecha de vencimiento al **24 de septiembre de 2015**. Basado en ello, expuso que era la acreedora de dicho préstamo garantizado y que la parte apelante se encontraba en el incumplimiento de los pagos, por lo que solicitó que se declarase la deuda vencida, líquida y exigible.

Por su lado, la parte apelante contestó la demanda el **9 de septiembre de 2020**. En síntesis, adujo que no se encontraba en

---

[2] Apéndice de la Parte Apelante, págs. 1-10.
[3] *Íd.* pág. 2.
[4] *Íd.* págs. 3-5.

incumplimiento y que la parte apelada carecía de legitimación para exigir el pago de los créditos puesto que la compra del préstamo era nula.[5]

Tras varios trámites procesales, el **18 de junio de 2021**, PR Recovery presentó una *Solicitud de Sentencia Sumaria*.[6] En la que expuso veintinueve (29) hechos materiales incontrovertidos los cuales constataban: la constitución del préstamo y sus garantías entre la parte apelante y el BDE; que la parte apelada era el actual tenedor y acreedor del préstamo; y el incumplimiento de los pagos por la parte apelante. Acompañó su solicitud con los siguientes documentos: **(A)** *Contrato de Préstamo*,[7] **(B)** *Contrato de Prenda*,[8] **(C)** *Pagaré Hipotecario I*,[9] **(D)** *Escritura de Hipoteca*,[10] **(E)** *Estudio de Título*,[11] **(F)** *Acuerdo de Gravamen Mobiliario I*,[12] **(G)** *Declaración de Financiamiento I*,[13] **(H)** *Contrato de Cesión*,[14] **(I)** *Garantía Continua e Ilimitada I*,[15] **(J)** *Notificación de Cesión*,[16] **(K)** *Contrato de Préstamo II*,[17] **(L)** *Pagaré I*,[18] **(M)** *Garantía Continua e Ilimitada*,[19] **(N)** *Acuerdo de Renovación y Aumento a la Línea de Crédito*,[20] **(O)** *Pagaré Enmendado I*,[21] **(P)** *Acuerdo de Confirmación, Ratificación y Extensión de Colateral I*,[22] **(Q)** *Acuerdo de Gravamen Mobiliario II*,[23] **(R y S)** *Acuerdo de Renovación de Línea de Crédito*,[24] **(T)** *Pagaré Enmendado II*,[25] **(U)** *Acuerdo de Confirmación, Ratificación y Extensión de*

---

[5] Apéndice de la Parte Apelante, pág. 47.
[6] *Íd.* págs. 181-195.
[7] *Íd.* págs. 196-212.
[8] *Íd.* págs. 213-217.
[9] *Íd.* págs. 218-219.
[10] *Íd.* págs. 220-237.
[11] *Íd.* pág. 238.
[12] *Íd.* págs. 239-250.
[13] *Íd.* pág. 251.
[14] *Íd.* págs. 252-253.
[15] *Íd.* págs. 254-256.
[16] *Íd.* pág. 257.
[17] *Íd.* págs. 258-277.
[18] *Íd.* págs. 278-279.
[19] *Íd.* págs. 280-283.
[20] *Íd.* págs. 284-289.
[21] *Íd.* págs. 290-292.
[22] *Íd.* pág. 293.
[23] *Íd.* págs. 294-297.
[24] Apéndice de la Parte Apelante, págs. 298-305 (El mismo documento fue presentado como anejos separados).
[25] *Íd.* págs. 306-308.

*Colateral II,*[26] **(V)** *Declaración de Financiamiento II,*[27] **(W)** *Declaración de Financiamiento III,*[28] y **(X)** *Declaración Jurada del Oficial de PR Recovery* ( la señora Nellie Soto Guzmán, *Portfolio Manager* de Island Portfolio Services, LLC, agente autorizado de PR Recovery).[29]

A su vez, el **29 de septiembre de 2021**, la parte apelante presentó *Moción de Oposición a Solicitud de Sentencia Sumaria*. En esencia, **presentó tres (3) controversias de hechos materiales que impedían la resolución sumaria de este caso; a saber**: **(1)** que la deuda estuviera vencida por el incumplimiento de los pagos;[30] **(2)** la adquisición del préstamo por parte de PR Recovery era nulo al violentar el contrato suscrito entre la parte apelante y el BDE, ya que PR Recovery no era una entidad autorizada para ser cesionaria del préstamo;[31] **(3)** dicha venta del préstamo violentó la ley orgánica del BDE.[32] Conforme a lo anterior, incluyó los siguientes como **hechos incontrovertibles:**

*a.* *No hay controversia que los demandados otorgaron con el BDE el préstamo 1020030539.*
*b.* *No hay controversia que la Clausula Sección 3.06. Cesión de Colateral, del Contrato de Préstamo entre el BDE y los demandados impiden la venta de estos préstamos a personas que no son nombradas en el Contrato de Préstamo.*
*c.* *No hay controversia que la Clausula 3.06 del contrato de préstamo, incluida en el anejo 4 indica:*

> ***"El "BANCO" tendrá el derecho absoluto de vender o ceder a cualquier otro "BANCO", fideicomiso o institución, toda o cualquier parte del Préstamo."***

*d.* *No hay controversia que PR Recovery __no__ es una de las tres (3) personas jurídicas autorizadas en el Contrato para que el BDE le pueda vender el préstamo.*
*e.* *La venta del préstamo de los demandados a PR Recovery es, por tanto, arbitraria, ilegal e inválida como hemos demostrado, por lo que corresponde anular la misma ab initio.*
*f.* *Los pactos entre contratantes tienen fuerza de ley y deben cumplirse a tenor con los mismos. Art. 1233 del Código Civil de Puerto Rico de 2020;*
*g.* *El BDE como parte del Estado es un contratante como otro cualquiera y tiene que cumplir con lo que se comprometió. Municipio de Ponce y Roselló González, 136 D.P.R. 776(1994).*

---

[26] *Íd.* pág. 309.
[27] *Íd.* págs. 310-312.
[28] *Íd.* págs. 313-315.
[29]*Íd.* págs. 316-319.
[30] Véase, Entrada Num. 29 de SUMAC, págs. 1-5 de 14.
[31] Véase, Entrada Num. 29 de SUMAC, págs. 5-9 de 14.
[32] Véase, Entrada Num. 29 de SUMAC, págs. 9-10 de 14.

> **h.** *No puede el presidente del BDE actuar en contra de sus propios pactos, siendo el propio BDE quien redactó, revisó, el Contrato con los demandados.*
> **i.** *Los demandados han cumplido su parte y creando empleos como resultado de los fondos de estos préstamos.*[33]

Así, la parte apelante le solicitó al TPI que pospusiera la disposición de la solicitud de sentencia sumaria y permitiera el descubrimiento de prueba. Acompañó junto con su oposición los siguientes documentos: **(Anejo 1)** *Carta de notificación de la adquisición del préstamo por PR Recovery,*[34] **(Anejo 2)** *Declaración Jurada de Aníbal Roldán Rodríguez, presidente de Empresas ARR, Inc.,*[35] **(Anejo 3)** *Notificación de Incumplimiento de Préstamo 1020030539,*[36] **(Anejo 4)** *Contrato de Préstamo,*[37] **(Anejo 5)** *Carta de Empresas ARR, Inc.,*[38] **(Anejo 6)** *Información de PR Recovery en el Registro de Corporaciones de Delaware,*[39] **(Anejo 7)** *Registro de Corporaciones del Departamento de Estado de Puerto Rico,*[40] y **(Anejo 8)** *Reglamento de Financiamiento del BDE.*[41]

El **27 de febrero de 2024**, el TPI acogió la solicitud de sentencia sumaria de PR Recovery —sin mencionar o considerar— los argumentos esbozados por la parte apelante en su oposición a la disposición sumaria. Así, determinó que los siguientes hechos **no estaban en controversia:**

> **1.** *El 25 de enero de 2011 el BDE, Empresas ARR y los esposos Roldán-De Jesús firmaron un Contrato de Préstamo mediante el cual el BDE les extendió un préstamo comercial, en su modalidad de línea de crédito, por la suma principal de CIENTO CINCUENTA MIL DÓLARES ($150,000.00), autenticado bajo el testimonio número 24,078 del Notario Público Gil Antonio Mercado Nieves (en adelante "Contrato de Préstamo I").*
>
> **2.** *Para asegurar y garantizar las obligaciones bajo el Contrato de Préstamo I, el 25 de enero de 2011 los Codemandados suscribieron un Contrato de Prenda, autenticados bajo los testimonios número 24,081 del Notario del Notario Público Gil Antonio Mercado Nieves.*

---

[33] Apéndice de la Parte Apelante, págs. 337-338.
[34] *Íd.* págs. 342-343.
[35] *Íd.* págs. 344-346.
[36] *Íd.* págs. 347-348.
[37] *Íd.* págs. 360-369.
[38] *Íd.* pág. 370.
[39] *Íd.* pág. 371.
[40] *Íd.* pág. 372.
[41] *Íd.* pág. 373.

**3.** *Mediante dichos Contrato de Prenda, los Codemandados entregaron la siguiente garantía como colateral:*

i. *Pagaré Hipotecario a la orden del Banco De Desarrollo Económico para Puerto Rico o a su orden, por la cantidad SETENTA Y TRES MIL QUINIENTOS DOLARES ($73,500.00) con intereses a computarse a un tipo de interés variable, aun después de su presentación o vencimiento, al dos por ciento (2%) sobre la tasa de interés preferente, no obstante, el límite mínimo de interés a cobrar será de siete por ciento (7%), vencedero a la presentación, autenticado bajo el número de afidávit 24,088, ante el Notario Gil Antonio Mercado Nieves (en adelante "Pagaré Hipotecario I"), garantizado mediante hipoteca constituida en virtud de la Escritura Pública número 3 (en adelante "Hipoteca I"), ante el mismo notario ambos el 25 de enero de 2011.*

**4.** *El pagaré hipotecario, el cual se encuentra en posesión de PR RECOVERY, grava todo el derecho, título e interés de los Codemandados sobre la siguiente propiedad inmueble grava la siguiente propiedad:*

*"RÚSTICA: Solar marcado con el número veintiocho (28) del Bloque "K" de la urbanización Bonneville Terrace Extensión, radicada en el Barrio Turabo del término municipal de Caguas, compuesto de 33112 m.c. En lindes por el Norte, en 25.282 m., con el solar número 27; por el Sur, en 25.285 m., con solares número 23, número 24 y número 25 del bloque "K"; por el Este; en doce punto doscientos ochenta y ocho metros (12.288 m.) con el solar número 26 y por el Oeste, en catorce punto seiscientos cuarenta y seis metros (14.646 m.) con la Calle número once (11) de la Urbanización." Enclava una casa.*

*Esta propiedad consta inscrita al folio 1 del tomo 1,727 de Caguas como la finca número 19,939, Registro de la Propiedad de Caguas, Sección I.*

**5.** *El gravamen sobre el pagaré hipotecario antes descrito quedó debidamente perfeccionado al constar inscrita la Hipoteca que lo garantiza, en el Registro de la Propiedad al folio 1 del tomo 1727 de Caguas bajo la finca número 19,939, inscripción 11va.*

**6.** *Para asegurar y garantizar adicionalmente las obligaciones bajo el Contrato de Préstamo I, el 25 de enero de 2011 los Codemandados suscribieron un Acuerdo de Gravamen Mobiliario, autenticado bajo el testimonio número 24,049 del Notario del Notario Público Gil Antonio Mercado Nieves.*

**7.** *En virtud de Acuerdo de Gravamen Mobiliario, se cedió y entregó en concepto de garantía colateral los siguientes bienes muebles:*

i. *"Todos los bienes, muebles, equipos, valores, bienes incorporales, bienes intangibles, documentos negociables, instrumentos, inventario, muebles, maquinaria, cuentas por cobrar, libros, récords, archivos, materiales y documentos sitos o utilizados en la operación del negocio del Prestatario, o en cualquier otra que tenga o pueda tener en el futuro, o en cualquier sitio o lugar en que se encuentren, y en todos los bienes descritos en el Exhibit A, si alguno, de este contrato, según enmendado de tiempo en tiempo, e incluyendo además, cualquier otro*

*que sean adquiridos posteriormente, ya sea por permuta, reemplazo o compra,*

ii. *Todo interés, dinero en efectivo, instrumentos y otra propiedad recibida de tiempo en tiempo de otra manera distribuida con relación a, o cambio de cualquiera de las propiedades antes descritas, incluyendo sus respectivos reemplazo, substitutos y productos y cualquier libro, récords y documentos relacionados directa o indirectamente con éstos;*

iii. *Todo producto, interés o propiedad de cualquier tipo generada por los bienes descritos anteriormente."*

**8.** *El gravamen sobre los bienes muebles anteriormente enumerados cedidos y entregados en prenda quedo debidamente perfeccionado al haberse inscrito bajo el número 2011000914 en el Registro de Transacciones Comerciales del Departamento de Estado, la correspondiente Declaración de Financiamiento autenticada el 25 de enero de 2011 bajo el testimonio número 24,089 del Notario Público Gil Antonio Mercado Nieves.*

**9.** *Como colateral adicional bajo el Contrato de Préstamo I, la codemandada Empresa ARR, suscribió un Contrato de Cesión de Derechos y Créditos y de Constitución de Gravamen Mobiliario mediante el cual cedió todos los pagos y derechos, bajo los contratos, facturas y/o certificaciones del trabajo presentes de las cuentas por cobrar que surjan por concepto de los contratos vigentes, presentes y futuros con el departamento de Educación, autenticado el 25 de enero de 2011 por el testimonio número 24,082 del Notario Público Gil Antonio Mercado Nieves.*

**10.** *Adicionalmente, los esposos Roldan-De Jesús garantizaron solidariamente, de forma ilimitada y continua, las obligaciones de Empresas ARR bajo el Contrato el Préstamo I, con bienes presentes y futuros, según documento titulado Garantía Continua e Ilimitada, autenticado el 25 de enero de 2011 por el testimonio 24,082 del Notario Público Gil Antonio Mercado Nieves.*

**11.** *El 14 de febrero de 2011 la codemandada Empresa ARR suscribió Notificación de Cesión de Derechos y Créditos por el cual cede todos los pagos a percibirse y sus derechos y créditos sobre las cuentas por cobrar o contratos, autenticado por el testimonio número 24,132 ante el Notario Público Gil Antonio Mercado Nieves.*

**12.** *El 9 de noviembre de 2012 el BDE y los Codemandados firmaron un Contrato de Préstamo mediante el cual se renovó la línea de crédito de $150,000.00 de la Empresa ARR y se aumentó la misma por $75,000.00, para una cantidad principal total bajo el préstamo comercial de DOSCIENTOS VEINTICINCO MIL DÓLARES ($225,000.00), manteniendo así los mismos términos y condiciones del préstamo original, el cual fue autenticado bajo el testimonio número 25,550 del Notario Público Gil Antonio Mercado Nieves (en adelante "Contrato de Préstamo II").*

**13.** *Para evidenciar los desembolsos bajo el Contrato de Préstamo II, los Codemandados suscribieron un Pagaré por la cantidad principal de $225,000.00,, con vencimiento al 8 de noviembre de 2013, devengando intereses sobre el balance decreciente de dicha suma principal hasta su total pago durante el plazo del pagaré y durante cualquier periodo de*

*incumplimiento, mora, falta de pago y aun después de su vencimiento, a computarse al dos por ciento (2%) sobre la tasa de interés preferente (en adelante "Pagaré I"), autenticado el 9 de noviembre de 2012 mediante testimonio número 25,551 del Notario Público Gil Antonio Mercado Nieves.*

**14.** *Adicionalmente, los esposos Roldan-De Jesús garantizaron solidariamente, de forma ilimitada y continua, las obligaciones de Empresas ARR bajo el Contrato el Préstamo II, con bienes presentes y futuros, según documento titulado Garantía Continua e Ilimitada, autenticado el 9 de noviembre de 2012 bajo el testimonio número 25,553 del Notario Público Gil Antonio Mercado Nieves.*

**15.** *El 25 de septiembre de 2014 el BDE y los Codemandados firmaron un Acuerdo de Renovación y Aumento a la Línea de Crédito mediante el cual se renovó la línea de crédito de $225,000.00 de la Empresa ARR y se aumentó la misma por $50,000.00, para una cantidad principal total bajo el préstamo comercial de DOSCIENTOS SETENTA Y CINCO MIL DÓLARES ($275,000.00), manteniendo así los mismos términos y condiciones del préstamo original (en adelante "Acuerdo de Renovación y Aumento a la Línea de Crédito"), el cual fue autenticado bajo el testimonio número 1,120 del Notario Público Aníbal J. Mendín Sánchez.*

**16.** *Para evidenciar el desembolso bajo Renovación y Aumento a la Línea de Crédito, los Codemandados suscribieron un Pagaré Enmendado, Modificado e Integrado por la cantidad principal de $275,000.00, con vencimiento al 24 de septiembre de 2015 (en adelante "Pagaré Enmendado I"), autenticado el 25 de septiembre de 2014 bajo el testimonio número 1,122 del Notario Público Aníbal J. Mendín Sánchez.*

**17.** *Para garantizar la renovación y aumento a la línea de crédito, los Codemandados suscribieron una Confirmación, Ratificación y Extensión de Colateral, por la cual confirmaron y ratificaron todas las obligaciones y responsabilidades y todos los gravámenes, prendas y garantías suscritos por los Codemandados a favor de BDE y contenidos en la colateral de los Contratos de Prestamos I y II, los cuales continúan en plena vigencia y extendieron a la Renovación y Aumento de Línea de Crédito, autenticado el 25 de septiembre de 2014 bajo el testimonio número 1,121 del Notario Público Aníbal J. Mendín Sánchez.*

**18.** *Como garantía adicional de la Renovación y Aumento a la Línea de Crédito, los codemandados Roldan-De Jesús otorgaron un Acuerdo de Gravamen Mobiliario y de Prenda, autenticado el 25 de septiembre de 2014 mediante el testimonio número 1,123, ante el Notario Público Aníbal J. Mendín Sánchez.*

**19.** *Mediante el Acuerdo de Gravamen Mobiliario y de Prenda los Codemandados entregaron el Pagaré Hipotecario I como colateral.*

**20.** *El 10 de junio de 2016 el BDE y los Codemandados suscribieron un Acuerdo de Renovación de Línea de Crédito (en adelante "Acuerdo de Renovación de la Línea de Crédito"), autenticado mediante el testimonio número 2,212 del Notario Público Aníbal J. Mendín Sánchez.*

**21.** *Mediante el Acuerdo de Renovación de Línea de Crédito los Codemandados reconocieron y aceptaron adeudar la cantidad principal de $232,386.22 bajo el Préstamo y se*

*extendió la fecha de vencimiento al 9 de junio de 2017 y se aumentó la tasa de interés variable al cinco por ciento (5%) sobre la tasa de interés preferente ("prime rate") determinada de tiempo en tiempo por el Citibank, N.A. en sus oficinas principales en la ciudad de Nueva York, Nueva York, Estados Unidos de América, para préstamos comerciales, no obstante, el límite mínimo de interés a cobrar será de ocho por ciento (8%).*

*22. Para evidenciar el Acuerdo de Renovación de la Línea de Crédito, los Codemandados suscribieron un Pagaré Enmendado, Modificado e Integrado por la cantidad principal de $275,000.00, con vencimiento al 9 de junio de 2017 (en adelante "Pagaré Enmendado II"), autenticado el 10 de junio de 2016 bajo el testimonio número 2,213 del Notario Público Aníbal 3. Mendín Sánchez.*

*23. Para garantizar la renovación de la línea de crédito, los Codemandados suscribieron una Confirmación, Ratificación y Extensión de Colateral por la cual confirman y ratifican todas las obligaciones y responsabilidades y todos los gravámenes, prendas y garantías suscritos por ellos a favor de BDE y contenidos en la colateral de los Contratos de Prestamos I y II y la Renovación y Aumento a la Línea de Crédito, respectivamente, los cuales continúan en plena vigencia y extendieron al Acuerdo de Renovación de la Línea de Crédito, autenticada el 10 de junio de 2016 mediante el testimonio número 2,214 del Notario Público Aníbal 3. Mendín Sánchez.*

*22. Como parte del colateral que garantiza el préstamo, BDE radicó el 22 de junio de 2016 en el Registro de Transacciones Comerciales del Departamento de Estado las correspondientes Declaraciones de Financiamiento números 2016003599 y 2016003600.[42]*

*24. El 26 de marzo de 2019, PR RECOVERY adquirió todo el interés de BDE en el préstamo objeto del presente litigio, quedando subrogada en todos los derechos del BDE ante las partes aquí codemandadas. Como evidencia de la adquisición, el BDE endosó los referidos pagarés a la orden de PR RECOVERY.[43]*

*25. PR RECOVERY es el actual tenedor de buena fe, por valor, de los mencionados Pagarés que evidencia la deuda reclamada.*

*26. Los Codemandados incumplieron con sus obligaciones contraídas bajo el Contrato de Préstamo I, Contrato de Préstamo II, Acuerdo de Renovación y Aumento a la Línea de Crédito, Acuerdo de Renovación de la Línea de Crédito, y demás documentos del préstamo, al dejar de pagar las mensualidades acordadas.*

*27. En vista del incumplimiento de los Codemandados con sus obligaciones de pago bajo el Contrato de Préstamo I, Contrato de Préstamo II, Acuerdo de Renovación y Aumento a la Línea de Crédito, y Acuerdo de Renovación de la Línea de Crédito, la deuda esta vencida, liquida y exigible en su totalidad.*

*28. Al 15 de noviembre de 2019 los Codemandados adeudan solidariamente a PR RECOVERY la cantidad de $213,709.01,*

---

[42] El TPI enumeró erróneamente como número veintidós (22) el que corresponde como hecho no controvertido número veinticuatro (24).

[43] De igual manera, el TPI enumeró erróneamente como número veinticuatro (24) el que corresponde como hecho no controvertido número veinticinco (25).

*desglosado en $194,982.00 de Principal y $18,727.01 de interés, más los interés que continúen acumulándose hasta el pago total de la deuda a razón de $53.42 diarios.*

**29.** *Bajo el Pagaré Hipotecario I, Pagaré I, Pagaré Enmendado I y Pagaré Enmendado II, los Codemandados acordaron que en caso de comenzada una acción judicial en cobro de dinero, el tenedor del Pagaré tiene derecho a cobrar una suma adicional de diez por ciento (10%) sobre la suma principal original del Pagaré por concepto de costas, gastos y honorarios de abogados.*

**30.** *Por tanto, los codemandados adeudan adicionalmente la cantidad de $27,500 por concepto de costas, gastos y honorarios de abogado según pactados.[44]*

Siendo así, el TPI dictó sentencia sumaria a favor de PR Recovery y condenó a la parte apelante a pagar solidariamente **$213,709.01,** más los intereses que continúen acumulándose hasta el pago total de la deuda a razón de **$53.42** diarios, más una cantidad de **$27,000** por costas y honorarios de abogados. Ordenó, además, la ejecución de la hipoteca y el gravamen mobiliario sobre el préstamo.

Inconforme con el dictamen, la parte apelante presentó el **18 de marzo de 2024** una *Moción Solicitando la Reconsideración de la Sentencia y Solicitud de Determinaciones de Hechos Adicionales Conforme la Regla 43 de Procedimiento Civil.[45]* En cuanto a la sentencia sumaria, señaló que el TPI dictó la misma sin resolver los planteamientos esbozados en su oposición a la moción de sentencia sumaria, ni consideró los documentos que se acompañaron. En ese sentido, reiteró las controversias de hecho esenciales que impedían la disposición del caso por vía sumaria presentadas en su oposición. Por lo cual, solicitó al TPI que reconsiderara su decisión e igualmente, solicitó que se tomara conocimiento judicial de los pleitos pendientes ante salas hermanas del TPI en el que se cuestiona la validez de la adquisición por parte de PR Recovery del préstamo objeto de controversia; en específico, del caso *Banco de*

---

[44] Apéndice de la Parte Apelante, págs. 400-405.
[45] *Íd.* págs. 411-424.

*Desarrollo Económico para Puerto Rico v. Garnet Capital Advisors, LLC, et al.,* Caso Núm. SJ2019CV11697 (603), TPI de San Juan (en adelante, "caso número SJ2019CV11697").

En cuanto a las determinaciones de hechos adicionales, la parte apelante solicitó al TPI que hiciera las siguientes determinaciones:

> *a. Que los demandados otorgaron con el BDE el préstamo **1020030539**.*
>
> *b. Que la Clausula Sección 3.06 Cesión de Colateral, del Contrato de Préstamo entre el BDE y los demandados impide la venta de estos préstamos a personas que no son nombradas en el Contrato de Préstamo.*
>
> *c. Que la Clausula 306 del contrato de préstamo, incluida en el anejo 4 indica:*
>
> ***"El "BANCO" tendrá el derecho absoluto de vender o ceder a cualquier otro "BANCO", fideicomiso o institución, toda o cualquier parte del Préstamo."***
>
> *d. Que PR Recovery **no** es una de las tres (3) personas jurídicas autorizadas en el Contrato para que el BDE le pueda vender el préstamo.*
>
> *e. La venta del préstamo de los demandados a PR Recovery es, por tanto, arbitraria, ilegal e inválida como hemos demostrado, por lo que corresponde anular la misma ab initio.*
>
> *f. Los pactos entre contratantes tienen fuerza de ley y deben cumplirse a tenor con los mismos. Art. 1233 del Código Civil de Puerto Rico de 2020.*
>
> *g. Que el BDE, como parte del Estado, es un contratante como otro cualquiera y tiene que cumplir con lo que se comprometió. Municipio de Ponce v Roselló González, 136 D.P.R. 776 (1994).*
>
> *h. No puede el presidente del BDE actuar en contra de sus propios actos, siendo el propio BDE quien redactó y revisó el Contrato con los demandados.*
>
> > *i. Los demandados han cumplido su parte y creado empleos como resultado de los fondos de estos préstamos.*[46]

Tras varios incidentes procesales,[47] el **10 de abril de 2024** la parte apelada se opuso a la solicitud de reconsideración y solicitud determinaciones de hecho adicionales de la parte apelante. Sostuvo que los argumentos planteados por ésta ya habían sido previamente

---

[46] Apéndice de la Parte Apelante, págs. 423-424.

[47] En los que el TPI emitió *Resolución* acogiendo la solicitud de la parte apelada para que se dictara una *Sentencia Enmendada Nunc Pro Tunc* a los fines de corregir la fecha desde que la deuda estaba vencida.

levantados, por lo que no ponían al TPI en condiciones de reconsiderar su dictamen sumario.

En específico, PR Recovery refutó que no fuera una entidad autorizada para adquirir la cartera de préstamos del BDE, dado que no necesitaba estar autorizada para hacer transacciones de negocio en Puerto Rico y el BDE tenía derecho absoluto de disponer del préstamo, conforme al pacto contractual.

Además, PR Recovery expuso que era la tenedora legítima de los pagarés originales y que, por su posesión, la ley le confería la legitimación para exigir el cumplimiento de estos.

Así las cosas, el **19 de junio de 2024** la parte apelante presentó *Asunción de Representación Legal & Relevo de Sentencia y Otros Extremos*. Entre otras cosas, solicitó el relevo de la sentencia sumaria, a la luz de los trámites procesales del caso número SJ2019CV11697, en el que el BDE cuestiona la validez de la transacción por la cual la parte apelada adquirió el préstamo objeto del presente caso.

A base de lo anterior, la parte apelante sostuvo que la legitimación de PR Recovery y la liquidez de la deuda constituían hechos materiales controvertidos, por lo que solicitó al TPI el relevo de sentencia o, en la alternativa, que permitiera un descubrimiento de prueba.[48]

El **27 de junio de 2024**,[49] el TPI emitió *Sentencia Enmendada Nunc Pro Tunc*, a los únicos fines de corregir en las págs. 3 y 14 la fecha de la deuda de 15 de noviembre de 2020 a **15 de noviembre de 2019**.[50]

---

[48] Apéndice de la Parte Apelante, págs. 461-468.
[49] Notificada el 28 de junio de 2024.
[50] Apéndice de la Parte Apelante, págs. 514-527.

El **28 de octubre de 2024** el TPI procedió a denegar tanto la solicitud de reconsideración como el relevo de sentencia presentados por la parte apelante.[51]

Inconforme, el **2 de diciembre de 2024** la parte apelante acudió a este Foro mediante una *Apelación*, y nos planteó los siguientes tres (3) errores:

> **PRIMER ERROR:** *Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Caguas, al disponer del caso mediante la vía sumaria e ignorar las sustanciales controversias de hechos planteadas por los demandados apelantes por la exclusión o apreciación errónea de la prueba presentada por el demandado.*

> **SEGUNDO ERROR:** *Erró el Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Caguas, al declarar no ha lugar la moción de Relevo de Sentencia y mantener la disposición del caso mediante la vía sumaria e ignorar las sustanciales controversias de legitimación y hechos planteados por los demandados apelantes.*

> **TERCER ERROR:** *Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Caguas, al no tomar conocimiento judicial del caso SJ2019CV11697 y el caso KLCE202100125.*

El **7 de enero de 2025**, compareció PR Recovery mediante *"Oposición a Apelación."*

Con el beneficio de la comparecencia de ambas partes, damos por sometido el asunto.

-II-

-A-

La Regla 36 de las Reglas de Procedimiento Civil regula el mecanismo procesal de la sentencia sumaria, cuyo propósito principal es facilitar la solución justa, rápida y económica de casos civiles que no presentan controversias genuinas o reales sobre hechos materiales y esenciales.[52] Se considera un hecho material esencial *"aquel que puede afectar el resultado de la reclamación de*

---

[51] Notificada el 30 de octubre de 2024; Apéndice de la Parte Apelante, págs. 534-535.
[52] Regla 36.3 (e) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3 (e). *Bobé v. UBS Financial Services*, 198 DPR 6, 19-20 (2017).

*acuerdo al derecho sustantivo aplicable".[53]* Por lo tanto, procederá dictar una sentencia sumaria:

> [S]i las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia, demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que [,] como cuestión de derecho[,] el tribunal debe dictar sentencia sumaria a favor de la parte promovente.[54]

Es decir, este mecanismo podrá ser utilizado en situaciones en las que la celebración de una vista o del juicio en su fondo resultare innecesaria, debido a que el tribunal tiene ante su consideración todos los hechos necesarios y pertinentes para resolver la controversia y solo le resta aplicar el derecho.[55] De manera, que un asunto no debe ser resuelto por la vía sumaria cuando:

> **(1)** existen hechos materiales y esenciales controvertidos; **(2)** hayan alegaciones afirmativas en la demanda que no han sido refutadas; **(3)** surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material y esencial, o **(4)** como cuestión de derecho no procede.[56]

La precitada Regla establece los requisitos de forma que debe satisfacer toda solicitud de sentencia sumaria.[57] El inciso (a) de la Regla 36.3 de Procedimiento Civil dispone que la moción de la parte promovente deberá contener:

> **1)** Una exposición breve de las alegaciones de las partes;
> **2)** los asuntos litigiosos o en controversia;
> **3)** la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;
> **4)** una relación concisa y organizada en párrafos enumerados, de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
> **5)** las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y

---

[53] *SLG Szendrey-Ramos v. Consejo de Titulares*, 184 DPR 133, 167 (2011) *(citas omitidas)*.
[54] Regla 36.3 (e) de Procedimiento Civil, *supra*.
[55] *Mejías v. Carrasquillo*, 185 DPR 288, 299 (2012).
[56] *SLG Szendrey-Ramos v. Consejo de Titulares*, *supra*, a la pág. 167 *(citas omitidas)*.
[57] *SLG Zapata-Rivera v. JF Montalvo*, 189 DPR 414, 431 (2013).

**6)** *el remedio que debe ser concedido.*[58]

Asimismo, presentada una moción de sentencia sumaria, la parte promovida no deberá cruzarse de brazos ni descansar exclusivamente en meras afirmaciones o en las aseveraciones contenidas en sus alegaciones.[59] Es preciso que la parte promovida formule —con prueba adecuada en derecho— una posición sustentada con contradeclaraciones juradas y contradocumentos que refuten los hechos presentados por el promovente.[60] Por consiguiente, cualquier duda que plantee sobre la existencia de hechos materiales en controversia no será suficiente para derrotar la procedencia de la solicitud.[61] Es decir, *"[t]iene que ser una duda que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes".*[62] Después de todo, *"[l]a etapa procesal para presentar prueba que controvierta los hechos propuestos por una parte en su Moción de Sentencia Sumaria no es en el juicio, sino al momento de presentar una Oposición a la Moción de Sentencia Sumaria, según lo exige la Regla 36 de Procedimiento Civil".*[63]

En ese sentido, la parte promovida también tiene la obligación de cumplir con las exigencias enunciadas en las cláusulas **1)**, **2)** y **3)** del inciso (a) de la Regla 36.3 de Procedimiento Civil.[64] Le corresponde citar con especificidad cada uno de los párrafos, según enumerados en la solicitud de sentencia sumaria, que entiende se encuentran en controversia, al igual aquellos que no.[65] Dicha tarea deberá ser realizada de forma tan detallada y específica como lo haya hecho la parte promovente y haciendo referencia a la prueba

---

[58] Regla 36.3 (a) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3 (a). *Énfasis nuestro.*

[59] *Rodríguez Méndez v. Laser Eye*, 195 DPR 769, 785 (2016).

[60] *Ramos Pérez v. Univisión*, 178 DPR 200, 214 – 215 (2010).

[61] *Oriental Bank v. Perapi et al.*, 192 DPR 7, 26 (2014).

[62] *Ramos Pérez v. Univisión, supra*, a la pág. 214.

[63] *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 122 (2015).

[64] Regla 36.3 (b)(1) de Procedimiento Civil, *supra*.

[65] *SLG Zapata-Rivera v. J.F. Montalvo, supra*, a la pág. 432.

admisible en la cual se sostiene la impugnación, con cita a la página o sección pertinente.[66]

Ahora bien, la inobservancia de las partes con la normativa pautada tiene repercusiones diferentes para cada una. Al respecto, nuestro Tribunal Supremo ha señalado que:

> *[P]or un lado, si quien promueve la moción incumple con los requisitos de forma, el tribunal no estará obligado a considerar su pedido. A contrario sensu, si la parte opositora no cumple con los requisitos, el tribunal puede dictar sentencia sumaria a favor de la parte promovente, **si procede en derecho**. Incluso, si la parte opositora se aparta de las directrices consignadas [en la regla] el tribunal podrá no tomar en consideración su intento de impugnación [de los hechos ofrecidos por el promovente].[67]*

En ese mismo orden, nuestra jurisprudencia ha establecido que el **deber de numeración** no constituye un mero formalismo ni es un simple requerimiento mecánico sin sentido.[68] Este esquema le confiere potestad a los tribunales para excluir aquellos hechos propuestos que no hayan sido enumerados adecuadamente o que no hayan sido debidamente correlacionados con la prueba.[69]

De igual manera, el Tribunal Supremo de PR, ha establecido que el mero hecho de que la parte promovida no presente evidencia que contradiga la presentada por la parte promovente, no implica que necesariamente proceda la sentencia sumaria.[70] Cónsono con la norma antes descrita, la doctrina establece que los documentos que acompañan la moción de sentencia sumaria deben verse en la forma más favorable a la parte que se opone a la moción, concediéndole el beneficio de toda inferencia que razonablemente se pueda derivar de ellos.[71]

Por otro lado, es menester señalar que al ejercer nuestra función revisora sobre decisiones en las que se aprueba o deniega una solicitud de sentencia sumaria, nos encontramos en la misma

---

[66] *Íd.; Burgos López et al. v. Condado Plaza*, 193 DPR 1, 17 (2015).
[67] *Meléndez González et al. v. M. Cuebas, supra*, a la pág. 111. *Énfasis nuestro.*
[68] *SLG Zapata-Rivera v. JF Montalvo, supra*, a la pág. 434.
[69] *SLG Zapata-Rivera v. JF Montalvo, supra*, a la pág. 433.
[70] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 912-913 (1994).
[71] *Corp. Presiding Bishop v. Purcell*, 117 DPR 714, 720 (1986).

posición que los foros de primera instancia.[72] Al tratarse de una revisión de *novo*, debemos ceñirnos a los mismos criterios y reglas que nuestro ordenamiento les impone a los foros de primera instancia, y debemos constatar que los escritos de las partes cumplan con los requisitos codificados en la Regla 36 de Procedimi*ento* Civil, *supra.*[73] A tenor con lo expuesto, el Tribunal Supremo ha pautado lo siguiente:

> *[E]l Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. [...]*
>
> *[Por el contrario], de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar de novo si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.*[74]

Desde luego, el alcance de nuestra función apelativa al intervenir en estos casos no comprenderá la consideración de prueba que no fue presentada ante el foro de primera instancia ni la adjudicación de hechos materiales en controversia.[75]

**-B-**

Por otra parte, la Regla 49.2 de las Reglas de Procedimiento Civil establece el mecanismo procesal disponible para solicitar al TPI el relevo de los efectos de una sentencia cuando esté presente alguno de los fundamentos allí expuestos.[76] En ese sentido, la Regla 49.2, *supra*, dispone:

> *Mediante una moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las razones siguientes:*
>
> *a) error, inadvertencia, sorpresa o negligencia excusable;*
> *b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;*
> *c) fraude (incluso el que hasta ahora se ha denominado*

---

[72] *Meléndez González et al. v. M. Cuebas, supra,* a la pág. 118.
[73] *Íd.*
[74] *Íd.* a las págs.,118-119.
[75] *Íd. Énfasis nuestro.*
[76] *García Colón et al. v. Sucn. González,* 178 DPR 527, 539 (2010).

—*intrínseco y el también llamado —extrínseco), falsa representación u otra conducta impropia de una parte adversa;*

d) *nulidad de la sentencia;*

e) *la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o*

f) *cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.*[77]

Entonces —para que proceda el relevo de sentencia bajo la Regla 49.2— es necesario que el peticionario argumente —por lo menos— una de las razones antes enumeradas para tal relevo. Es decir —que está obligado— a justificar su solicitud amparándose en una de las causales establecidas en dicha regla.[78] Así, constituye una decisión discrecional el relevar a una parte de los efectos de una sentencia, salvo en los casos de nulidad o cuando la sentencia ha sido satisfecha.[79] Por último, ha sido norma procesal reiterada por nuestra jurisprudencia que la moción de relevo de sentencia no puede utilizarse *"para alegar cuestiones sustantivas que debieron ser planteadas mediante los recursos de reconsideración y apelación"*.[80]

**-C-**

Por otro lado, la Regla 201 de las Reglas de Evidencia de Puerto Rico, permite a los tribunales, aun en la etapa apelativa,[81] tomar conocimiento judicial de aquellos hechos adjudicativos que no estén sujetos a controversia razonable. No son razonablemente controvertibles si:

***1)** son de conocimiento general dentro de la jurisdicción territorial del tribunal, o **2)** son susceptibles de corroboración inmediata y exacta mediante fuentes cuya exactitud no puede ser razonablemente cuestionada.*[82]

---

[77] Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 49.2.

[78] *García Colón et al. v. Sucn. González, supra*, pág. 540.

[79] *Íd.; Montañez Rivera v. Policía de Puerto Rico*, 150 DPR 917, 922 (2000); R. Hernández Colón, *Práctica Jurídica de Puerto Rico; Derecho Procesal Civil*, 6ta ed. San Juan, Ed. LexisNexis, 2017, sec. 4803, pág. 454.

[80] *García Colón et al. v. Sucn. González, supra*, pág. 541.

[81] Regla 201 (E) de las Reglas de Evidencia de Puerto Rico, 32 LPRA Ap. IV, R. 201(E).

[82] 32 LPRA Ap. IV, R. 201 (B). *Énfasis nuestro.*

Como corolario de lo anterior, el Tribunal Supremo de PR ha resuelto que los tribunales pueden tomar conocimiento judicial de los procedimientos celebrados, sentencias o resoluciones dictadas en otros pleitos, esto por tratarse de hechos de exacta e inmediata comprobación.[83]

**-III-**

Primeramente, la parte apelante nos señala como primer error que el TPI erró al disponer del caso por vía sumaria —sin culminar el descubrimiento de pruebas— ni considerar en la sentencia sumaria apelada las controversias de hechos materiales planteadas en la oposición por esta parte. Tiene razón. Veamos.

De entrada, por estar en la misma posición que el TPI ante la *Solicitud de Sentencia Sumaria* y la *Moción de Oposición a Solicitud de Sentencia Sumaria*, procedemos a examinar de *novo*, si las partes cumplieron con la Regla 36.3 (a) de Procedimiento Civil.

En primer orden, la parte apelada cumplió con las especificaciones de la referida regla. Realizó una exposición breve de las alegaciones de las partes;[84] incluyó los asuntos litigiosos o en controversia y la causa de acción respecto a la cual se solicita la sentencia sumaria;[85] detalló una relación concisa y organizada de veintinueve (29) párrafos enumerados y sus incisos —de todos los hechos esenciales y pertinentes sobre los cuales entendía que no hay controversia sustancial— con indicación en cada párrafo de la prueba admisible en evidencia y declaración jurada que obra en el expediente del tribunal;[86] expresó las razones por las cuales se debe dictar la sentencia con argumentos del derecho aplicable,[87] y el remedio que debe ser concedido.[88]

---

[83] *Asociación de Periodistas v. González,* 127 DPR 704, 714-715 (1991).
[84] Apéndice de la Parte Apelante, págs. 181-183.
[85] *Íd.*
[86] *Íd.,* págs. 183-190.
[87] Apéndice de la Parte Apelante, págs. 190-194.
[88] *Íd.,* págs. 194-195.

Por otro lado, en lo que respecta a la *Moción de Oposición a Solicitud de Sentencia Sumaria* de la parte apelante, un análisis sobre la misma nos lleva a concluir que no cumplió cabalmente con las disposiciones de la referida Regla 36. En específico, no hizo referencia a los párrafos enumerados por la parte apelada en su solicitud. No obstante, enumeró tres (3) hechos materiales que entendía estaban **en controversia** con indicación de la prueba admisible que sostienen los mismos; **a saber**: **(1)** que la deuda estuviera vencida por el incumplimiento de los pagos;[89] **(2)** la adquisición del préstamo por parte de PR Recovery es nulo al violentar el contrato suscrito entre la parte apelante y el BDE, ya que PR Recovery no es una entidad autorizada para ser cesionaria del préstamo;[90] **(3)** dicha venta del préstamo violentó la ley orgánica del BDE.[91] También, incluyó los siguientes hechos como **incontrovertibles**:

   a. *No hay controversia que los demandados otorgaron con el BDE el préstamo 1020030539.*
   b. *No hay controversia que la Clausula Sección 3.06. Cesión de Colateral, del Contrato de Préstamo entre el BDE y los demandados impiden la venta de estos préstamos a personas que no son nombradas en el Contrato de Préstamo.*
   c. *No hay controversia que la Clausula 3.06 del contrato de préstamo, incluida en el anejo 4 indica:*

   > *"El "BANCO" tendrá el derecho absoluto de vender o ceder a cualquier otro "BANCO", fideicomiso o institución, toda o cualquier parte del Préstamo."*

   d. *No hay controversia que PR Recovery **no** es una de las tres (3) personas jurídicas autorizadas en el Contrato para que el BDE le pueda vender el préstamo.*
   e. *La venta del préstamo de los demandados a PR Recovery es, por tanto, arbitraria, ilegal e inválida como hemos demostrado, por lo que corresponde anular la misma ab initio.*
   f. *Los pactos entre contratantes tienen fuerza de ley y deben cumplirse a tenor con los mismos. Art. 1233 del Código Civil de Puerto Rico de 2020;*
   g. *El BDE como parte del Estado es un contratante como otro cualquiera y tiene que cumplir con lo que se comprometió. Municipio de Ponce y Roselló González, 136 D.P.R. 776 (1994).*

---

[89] Véase, Entrada Num. 29 de SUMAC, págs. 1-5 de 14.
[90] Véase, Entrada Num. 29 de SUMAC, págs. 5-9 de 14.
[91] Véase, Entrada Num. 29 de SUMAC, págs. 9-10 de 14.

> **h.** *No puede el presidente del BDE actuar en contra de sus propios pactos, siendo el propio BDE quien redactó, revisó, el Contrato con los demandados.*
>
> **i.** *Los demandados han cumplido su parte y creando empleos como resultado de los fondos de estos préstamos.[92]*

Ahora bien, el incumplimiento parcial por la parte apelante de los requisitos procesales de la Regla 36, no dispone del asunto. Un análisis del expediente nos señala que, en el presente caso, no correspondía disponer del litigio por la vía sumaria. Dado que en la oposición a la solicitud de sentencia sumaria la parte apelante presentó controversias de hechos pertinentes, las cuales deben ser dirimidas en un juicio en su fondo.

En específico, la parte apelante arguye que la deuda reclamada por PR RECOVERY no es líquida ni exigible, ya que no se encontraba en incumplimiento. Particularmente, plantea que BDE, conforme a lo pactado en el contrato, deducía de la cuenta bancaria de forma directa y mensualmente, los pagos dirigidos a satisfacer la deuda.[93] De igual manera, que los pagos realizados por el Departamento de Educación, contratante de la parte apelante, eran acreditados al BDE como pagos por concepto de la deuda.[94] En ese sentido, sustenta todo lo anterior en la declaración jurada del señor Aníbal Roldán Rodríguez, presidente de Empresas ARR, Inc. y en el propio contrato de préstamo.[95] Además, añade que la parte apelada había recibido sobre **$97,000.00** por concepto de pagos de la deuda desde que adquirió el préstamo hasta la fecha en que declaró la deuda vencida.[96] Asimismo, que al momento en el que declaró la deuda vencida, PR Recovery tenía más de **$17,000.00** por pagos realizados por el Departamento de Educación, los cuales no habían

---

[92] Apéndice de la Parte Apelante, págs. 337-338.
[93] *Íd.* pág. 329.
[94] *Íd.*
[95] *Íd.* págs. 344-346 y 350-369.
[96] *Íd.* pág. 345.

sido acreditados a la deuda porque PR Recovery no permitía que le fueran endosados por la parte apelante.[97]

Nótese, que el convenio entre el BDE y la parte apelante de que los pagos realizados por el Departamento de Educación serían acreditados directamente a la deuda del préstamo, surge de la sección 1.2.1 de la *Renovación y Aumento a la Línea de Crédito*[98] y del *Acuerdo de Renovación de Línea de Crédito*.[99] En dichos documentos, el primero con fecha de **25 de septiembre de 2014** y el segundo con fecha de **10 de junio de 2016**, la parte apelante y el BDE modificaron los términos y condiciones del préstamo y acordaron que los pagos hechos por el Departamento de Educación serían aplicados a la deuda.[100] Por otro lado, la única prueba por la que se pretende controvertir lo anterior es la declaración jurada de la oficial de PR Recovery y la notificación del incumplimiento que le remitió PR Recovery a Empresas ARR, Inc.[101]

Por lo tanto, no hay duda de que la liquidez, la exigibilidad y la cuantía de la deuda es una controversia de hechos medular para el presente caso. Sin embargo, no surge de los documentos que anejaron a la *Solicitud de Sentencia Sumaria* que la deuda estuviera vencida. Todo lo contrario, surge de estos el acuerdo por el cual a través de los pagos emitidos por el Departamento de Educación, la parte apelante abonaría a la deuda. Lo anterior unido a los planteamientos esbozados por la parte apelante en oposición a la sentencia sumaria, los cuales fueron ignorados por el foro primario,[102] **mantiene viva la controversia medular de hechos del presente caso; a saber:** la liquidez y exigibilidad de la deuda por el incumplimiento de las obligaciones de la parte apelante; y, si la

---

[97] *Íd.* pág. 330.
[98] *Íd.* págs. 284-289.
[99] *Íd.* págs. 298-305.
[100] *Íd.* págs. 285 y 299.
[101] *Íd.* págs. 316-319 y 347.
[102] En la sentencia sumaria Apelada, el TPI no atiende ni hace mención alguna de la oposición a la moción de sentencia presentada por la parte apelante.

adquisición del préstamo por parte de PR Recovery es nulo, ya que conforme al contrato suscrito entre la parte apelante y el BDE, se debe examinar si PR Recovery es una entidad autorizada para ser cesionaria este préstamo. Siendo así, un descubrimiento de prueba sobre estas controversias, arrojarían luz sobre estas. Por consiguiente, no correspondía disponer por vía sumaria la presente controversia.

A tono con los documentos que obran en el expediente, incluimos de *novo* las siguientes determinaciones de hechos materiales como **incontrovertidos** que el TPI debió exponer en su dictamen:

1. *El 25 de enero de 2011 el BDE, Empresas ARR y los esposos Roldán-De Jesús firmaron un Contrato de Préstamo mediante el cual el BDE les extendió un préstamo comercial, en su modalidad de línea de crédito, por la suma principal de CIENTO CINCUENTA MIL DÓLARES ($150,000.00), autenticado bajo el testimonio número 24,078 del Notario Público Gil Antonio Mercado Nieves (en adelante "Contrato de Préstamo I").*

2. *Para asegurar y garantizar las obligaciones bajo el Contrato de Préstamo I, el 25 de enero de 2011 los Codemandados suscribieron un Contrato de Prenda, autenticados bajo los testimonios número 24,081 del Notario del Notario Público Gil Antonio Mercado Nieves.*

3. *Mediante dichos Contrato de Prenda, los Codemandados entregaron la siguiente garantía como colateral:*

   i. *Pagaré Hipotecario a la orden del Banco De Desarrollo Económico para Puerto Rico o a su orden, por la cantidad SETENTA Y TRES MIL QUINIENTOS DOLARES ($73,500.00) con intereses a computarse a un tipo de interés variable, aun después de su presentación o vencimiento, al dos por ciento (2%) sobre la tasa de interés preferente, no obstante, el límite mínimo de interés a cobrar será de siete por ciento (7%), vencedero a la presentación, autenticado bajo el número de afidávit 24,088, ante el Notario Gil Antonio Mercado Nieves (en adelante "Pagaré Hipotecario I"), garantizado mediante hipoteca constituida en virtud de la Escritura Pública número 3 (en adelante "Hipoteca I"), ante el mismo notario ambos el 25 de enero de 2011.*

4. *Dicho pagaré hipotecario, grava todo el derecho, título e interés de los Codemandados sobre la siguiente propiedad inmueble grava la siguiente propiedad:*

   *"RÚSTICA: Solar marcado con el número veintiocho (28) del Bloque "K" de la urbanización Bonneville Terrace Extensión, radicada en el Barrio Turabo del término municipal de Caguas, compuesto de*

*33112 m.c. En lindes por el Norte, en 25.282 m., con el solar número 27; por el Sur, en 25.285 m., con solares número 23, número 24 y número 25 del bloque "K"; por el Este; en doce punto, doscientos ochenta y ocho metros (12.288 m.) con el solar número 26 y por el Oeste, en catorce punto seiscientos cuarenta y seis metros (14.646 m.) con la Calle número once (11) de la Urbanización." Enclava una casa.*

*Esta propiedad consta inscrita al folio 1 del tomo 1,727 de Caguas como la finca número 19,939, Registro de la Propiedad de Caguas, Sección I.*

5. *El gravamen sobre el pagaré hipotecario antes descrito quedó debidamente perfeccionado al constar inscrita la Hipoteca que lo garantiza, en el Registro de la Propiedad al folio 1 del tomo 1727 de Caguas bajo la finca número 19,939, inscripción 11va.*

6. *Para asegurar y garantizar adicionalmente las obligaciones bajo el Contrato de Préstamo I, el 25 de enero de 2011 los Codemandados suscribieron un Acuerdo de Gravamen Mobiliario, autenticado bajo el testimonio número 24,049 del Notario del Notario Público Gil Antonio Mercado Nieves.*

7. *En virtud de Acuerdo de Gravamen Mobiliario, se cedió y entregó en concepto de garantía colateral los siguientes bienes muebles:*

   i. *"Todos los bienes, muebles, equipos, valores, bienes incorporales, bienes intangibles, documentos negociables, instrumentos, inventario, muebles, maquinaria, cuentas por cobrar, libros, récords, archivos, materiales y documentos sitos o utilizados en la operación del negocio del Prestatario, o en cualquier otra que tenga o pueda tener en el futuro, o en cualquier sitio o lugar en que se encuentren, y en todos los bienes descritos en el Exhibit A, si alguno, de este contrato, según enmendado de tiempo en tiempo, e incluyendo además, cualquier otro que sean adquiridos posteriormente, ya sea por permuta, reemplazo o compra.*

   ii. *Todo interés, dinero en efectivo, instrumentos y otra propiedad recibida de tiempo en tiempo de otra manera distribuida con relación a, o cambio de cualquiera de las propiedades antes descritas, incluyendo sus respectivos reemplazo, substitutos y productos y cualquier libro, récords y documentos relacionados directa o indirectamente con éstos.*

   iii. *Todo producto, interés o propiedad de cualquier tipo generada por los bienes descritos anteriormente."*

8. *El gravamen sobre los bienes muebles anteriormente enumerados cedidos y entregados en prenda quedo debidamente perfeccionado al haberse inscrito bajo el número 2011000914 en el Registro de Transacciones Comerciales del Departamento de Estado, la correspondiente Declaración de Financiamiento autenticada el 25 de enero de 2011 bajo el testimonio número 24,089 del Notario Público Gil Antonio Mercado Nieves.*

9. *Como colateral adicional bajo el Contrato de Préstamo I, la codemandada Empresa ARR, suscribió un Contrato de Cesión de Derechos y Créditos y de Constitución de Gravamen Mobiliario mediante el cual cedió todos los pagos y derechos, bajo los contratos, facturas y/o*

*certificaciones del trabajo presentes de las cuentas por cobrar que surjan por concepto de los contratos vigentes, presentes y futuros con el departamento de Educación, autenticado el 25 de enero de 2011 por el testimonio número 24,082 del Notario Público Gil Antonio Mercado Nieves.*

10. *Adicionalmente, los esposos Roldan-De Jesús garantizaron solidariamente, de forma ilimitada y continua, las obligaciones de Empresas ARR bajo el Contrato el Préstamo I, con bienes presentes y futuros, según documento titulado Garantía Continua e Ilimitada, autenticado el 25 de enero de 2011 por el testimonio 24,082 del Notario Público Gil Antonio Mercado Nieves.*

11. *El 14 de febrero de 2011 la codemandada Empresa ARR suscribió Notificación de Cesión de Derechos y Créditos por el cual cede todos los pagos a percibirse y sus derechos y créditos sobre las cuentas por cobrar o contratos, autenticado por el testimonio número 24,132 ante el Notario Público Gil Antonio Mercado Nieves.*

12. *El 9 de noviembre de 2012 el BDE y los Codemandados firmaron un Contrato de Préstamo mediante el cual se renovó la línea de crédito de $150,000.00 de la Empresa ARR y se aumentó la misma por $75,000.00, para una cantidad principal total bajo el préstamo comercial de DOSCIENTOS VEINTICINCO MIL DÓLARES ($225,000.00), manteniendo así los mismos términos y condiciones del préstamo original, el cual fue autenticado bajo el testimonio número 25,550 del Notario Público Gil Antonio Mercado Nieves (en adelante "Contrato de Préstamo II").*

13. *Para evidenciar los desembolsos bajo el Contrato de Préstamo II, los Codemandados suscribieron un Pagaré por la cantidad principal de $225,000.00,, con vencimiento al 8 de noviembre de 2013, devengando intereses sobre el balance decreciente de dicha suma principal hasta su total pago durante el plazo del pagaré y durante cualquier periodo de incumplimiento, mora, falta de pago y aun después de su vencimiento, a computarse al dos por ciento (2%) sobre la tasa de interés preferente (en adelante "Pagaré I"), autenticado el 9 de noviembre de 2012 mediante testimonio número 25,551 del Notario Público Gil Antonio Mercado Nieves.*

14. *Adicionalmente, los esposos Roldan-De Jesús garantizaron solidariamente, de forma ilimitada y continua, las obligaciones de Empresas ARR bajo el Contrato el Préstamo II, con bienes presentes y futuros, según documento titulado Garantía Continua e Ilimitada, autenticado el 9 de noviembre de 2012 bajo el testimonio número 25,553 del Notario Público Gil Antonio Mercado Nieves.*

15. *El 25 de septiembre de 2014 el BDE y los Codemandados firmaron un Acuerdo de Renovación y Aumento a la Línea de Crédito mediante el cual se renovó la línea de crédito de $225,000.00 de la Empresa ARR y se aumentó la misma por $50,000.00, para una cantidad principal total bajo el préstamo comercial de DOSCIENTOS SETENTA Y CINCO MIL DÓLARES ($275,000.00), manteniendo así los mismos términos y condiciones del préstamo original (en adelante "Acuerdo de Renovación y Aumento a la Línea de Crédito"), el cual fue autenticado bajo el testimonio número 1,120 del Notario Público Aníbal J. Mendín Sánchez.*

16. *Para evidenciar el desembolso bajo Renovación y Aumento a la Línea de Crédito, los Codemandados suscribieron un Pagaré Enmendado, Modificado e*

*Integrado por la cantidad principal de $275,000.00, con vencimiento al 24 de septiembre de 2015 (en adelante "Pagaré Enmendado I"), autenticado el 25 de septiembre de 2014 bajo el testimonio número 1,122 del Notario Público Aníbal J. Mendín Sánchez.*

17. *Para garantizar la renovación y aumento a la línea de crédito, los Codemandados suscribieron una Confirmación, Ratificación y Extensión de Colateral, por la cual confirmaron y ratificaron todas las obligaciones y responsabilidades y todos los gravámenes, prendas y garantías suscritos por los Codemandados a favor de BDE y contenidos en la colateral de los Contratos de Prestamos I y II, los cuales continúan en plena vigencia y extendieron a la Renovación y Aumento de Línea de Crédito, autenticado el 25 de septiembre de 2014 bajo el testimonio número 1,121 del Notario Público Aníbal J. Mendín Sánchez.*

18. *Como garantía adicional de la Renovación y Aumento a la Línea de Crédito, los codemandados Roldan-De Jesús otorgaron un Acuerdo de Gravamen Mobiliario y de Prenda, autenticado el 25 de septiembre de 2014 mediante el testimonio número 1,123, ante el Notario Público Aníbal J. Mendín Sánchez.*

19. *Mediante el Acuerdo de Gravamen Mobiliario y de Prenda los Codemandados entregaron el Pagaré Hipotecario I como colateral.*

20. *El 10 de junio de 2016 el BDE y los Codemandados suscribieron un Acuerdo de Renovación de Línea de Crédito (en adelante "Acuerdo de Renovación de la Línea de Crédito"), autenticado mediante el testimonio número 2,212 del Notario Público Aníbal J. Mendín Sánchez.*

21. *Mediante el Acuerdo de Renovación de Línea de Crédito los Codemandados reconocieron y aceptaron adeudar la cantidad principal de $232,386.22 bajo el Préstamo y se extendió la fecha de vencimiento al 9 de junio de 2017 y se aumentó la tasa de interés variable al cinco por ciento (5%) sobre la tasa de interés preferente ("prime rate") determinada de tiempo en tiempo por el Citibank, N.A. en sus oficinas principales en la ciudad de Nueva York, Nueva York, Estados Unidos de América, para préstamos comerciales, no obstante, el límite mínimo de interés a cobrar será de ocho por ciento (8%).*

22. *Para evidenciar el Acuerdo de Renovación de la Línea de Crédito, los Codemandados suscribieron un Pagaré Enmendado, Modificado e Integrado por la cantidad principal de $275,000.00, con vencimiento al 9 de junio de 2017 (en adelante "Pagaré Enmendado II"), autenticado el 10 de junio de 2016 bajo el testimonio número 2,213 del Notario Público Aníbal 3. Mendín Sánchez.*

23. *Para garantizar la renovación de la línea de crédito, los Codemandados suscribieron una Confirmación, Ratificación y Extensión de Colateral por la cual confirman y ratifican todas las obligaciones y responsabilidades y todos los gravámenes, prendas y garantías suscritos por ellos a favor de BDE y contenidos en la colateral de los Contratos de Prestamos I y II y la Renovación y Aumento a la Línea de Crédito, respectivamente, los cuales continúan en plena vigencia y extendieron al Acuerdo de Renovación de la Línea de Crédito, autenticada el 10 de junio de 2016 mediante el testimonio número 2,214 del Notario Público Aníbal 3. Mendín Sánchez.*

24. *Como parte del colateral que garantiza el préstamo, BDE radicó el 22 de junio de 2016 en el Registro de*

> *Transacciones Comerciales del Departamento de Estado las correspondientes Declaraciones de Financiamiento números 2016003599 y 2016003600.*
>
> **25.** *Mediante una transacción el 26 de marzo de 2019, entre PR RECOVERY y BDE, la primera adquirió todo el interés de BDE en el préstamo objeto del presente litigio, y reclama que está subrogada en todos los derechos del BDE ante las partes aquí codemandadas. Presenta como evidencia de la adquisición, el BDE endoso de los referidos pagarés a la orden de PR RECOVERY.*
>
> **26.** *PR RECOVERY sostiene ser el actual tenedor de los mencionados Pagarés, por lo que reclama que las Empresas ARR y los esposos Roldán-De Jesús han incumplido con las obligaciones contractuales al dejar de pagar las mensualidades acordadas.*

Conforme a lo antes resuelto, se hace innecesario que atendamos el segundo y tercer error, relacionados a la moción de relevo de sentencia y a la solicitud para que el TPI tomara conocimiento judicial de los casos *SJ2019CV11697* y *KLCE202100125.*

Por consiguiente, el TPI incidió al disponer del caso por vía sumaria dado que existen controversias de hechos esenciales en cuanto a la liquidez y exigibilidad de la deuda y la validez de la adquisición del préstamo por parte de PR Recovery que ameritan un juicio en su fondo; en virtud de esto, resolvemos revocar la sentencia sumaria apelada.

**-IV-**

Por los fundamentos antes expuestos, **revocamos** la *Sentencia* dictada por el Tribunal de Primera Instancia, Sala Superior de Caguas. Siendo así, se devuelve el caso para la continuación de los procesos, de conformidad con lo expuesto en este dictamen.

Lo acordó el Tribunal y certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
